TRINITY INDUSTRIES, INC. and the Texas A & M University System, Plaintiffs,

v.

ROAD SYSTEMS, INC., Interstate Steel Corporation, Kaddo Kothmann, Safety by Design, Inc., John D. Reid, Dean L. Sicking, and Kothmann Enterprises, Inc., Defendants.

Case No. 1:98–CV–1623.

United States District Court, E.D. Texas, Beaumont Division.

Sept. 24, 2002.

Russell Clay Brown of Wellborn, Houston, Adkison, Mann, Sadler & Hill, Henderson, TX, Guy Vincent Manning, Fort Worth, TX, Vincent Jerome Allen, Duke Wieder Yee, and Casey L. Griffith of Carstens, Yee & Cahoon, Dallas, TX, Steven E. Ross of Gardere Wynne & Sewell, Dallas, TX, Linda Ibach Shaunessy, Attorney General's Office, Austin, TX, for Plaintiffs.

Max Lalon Tribble, Jr. of Susman, Godfrey, LLP, Charles J. Rogers, Houston, TX, B. Trent Webb, J. David Wharton, James H. Marsh Jr. & Bart A. Starr of Shook, Hardy & Bacon, Kansas City, MO, Blaine Douglass Edwards, Peter Emmanuel Strand of Shook, Hardy & Bacon, Houston, TX, Drew Mouton of Mouton & Mouton, Big Springs, TX, Robert L. Nefsky of Rembolt, Ludtke & Berger, Lincoln, NE, for Defendants.

## ORDER DENYING DEFENDANTS MO-TION FOR SUMMARY JUDGMENT OF UNENFORCEABILITY

SCHELL, District Judge.

This matter is before the court on the motion for summary judgment (Dkt.# 223) filed on April 30, 2002, by Defendants Road Systems, Inc. ("Road Systems"), Interstate Steel Corporation ("ISC"), Kaddo F. Kothmann ("Kothmann"), Dean L. Sicking ("Sicking"), John D. Reid ("Reid"), and Safety by Design, Inc. ("SDI") (collectively "Defendants"). Plaintiffs Trinity Industries, Inc. ("Trinity") and the Texas A & M University System ("TAMU") filed a response on June 7, 2002 (Dkt.# 273). Defendants replied on June 24, 2002 (Dkt.# 313). A sur-reply was filed by Plaintiffs on July 2, 2002 (Dkt.# 334). After considering the arguments made by the parties in the briefs and the applicable law, the court is of the opinion that Defendants' motion for summary judgment of unenforceability should be DENIED.

## I. Summary Judgement Standard

The purpose of summary judgment is to isolate and dispose of factually insufficient claims or defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *See id.* at 248, 106 S.Ct. 2505. The party moving for summary judgment has the burden to show that

there is no genuine issue of fact and that it is entitled to judgment as a matter of law. *See id.* at 247, 106 S.Ct. 2505. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *See Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. In this instance, the movant is not required to offer evidence to negate the nonmovant's claims. *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 885–86, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Once the movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). The nonmovant must adduce affirmative evidence. *See Anderson,* 477 U.S. at 257, 106 S.Ct. 2505.

Summary judgment evidence is subject to the same rules that govern admissibility of evidence at trial. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 175–76 (5th Cir.1990). In considering a motion for summary judgment, the court cannot make credibility determinations, weigh evidence, or draw inferences for the movant. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.*

## II. Unenforceability

### A. Inequitable Conduct

■ Patent applicants are under a duty of candor, good faith, and honesty when prosecuting patent applications in the United States Patent and Trademark Office ("PTO"). *Precision Instrument Mfg.*

Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 818, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). A breach of this duty constitutes inequitable conduct. *Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1178 (Fed.Cir. 1995). If inequitable conduct is found, a court may refuse to allow the culpable plaintiffs the benefit of enforcing the patent against alleged infringers. *Baxter Int'l, Inc. v. McGaw, Inc.,* 149 F.3d 1321, 1327 (Fed.Cir.1998). "Inequitable conduct includes affirmative misrepresentations of material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Id.* at 1327; *Kingsdown Med. Consultants v. Hollister,* 863 F.2d 867, 872 (Fed.Cir.1988).

■ Defendants claim that TAMU engaged in inequitable conduct during the prosecution of the United States Patent No. 4,928,928 ("the '928 patent") by failing to disclose the source of the funding that led to the development of the patented device. Thus, to prevail, Defendants must show that TAMU failed to disclose the source of the funding, that the funding source was material, and that TAMU acted with intent to deceive the PTO. This showing must be made by clear and convincing evidence. *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.,* 204 F.3d 1368, 1373 (Fed.Cir.2000).

Once the threshold levels of materiality and intent have been established, the court weighs the materiality of the omission together with the evidence of intent in order to determine whether the patent applicant's conduct is so culpable that the patent should be held unenforceable. *Baxter,* 149 F.3d at 1327 (citing *Molins,* 48 F.3d at 1178). "The more material the omission or misrepresentation, the lower the level of intent required to establish inequitable conduct, and vice versa." *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 120 F.3d 1253, 1256 (Fed.Cir.1997).

■ Defendants claim, and Plaintiffs admit, that TAMU did not disclose to the PTO that the federal government helped fund the research that led to the development of the '928 patent. *Defs.' Mot. for Summ. J. of Unenforceability,* Ex. 47, request for admission # 12. Therefore, the court must decide three issues:(1) whether TAMU was required to disclose the federal government's funding of the research leading to the '928 patent; (2) whether such funding and possible governmental rights were material to patentability; and (3) whether Defendants have presented sufficient evidence of TAMU's intent to deceive the PTO in order to prevail on the affirmative defense of inequitable conduct at the summary judgment stage.

The United States government has an interest in a patent developed under a "funding agreement". 35 U.S.C. § 202(c)(4) (also known as the "Bayh–Dole Act"). Defendants claim that the '928 patent was the product of a "funding agreement" and thus the federal government automatically had rights to the patent. *Defs.' Mot. for Summ. J. of Unenforceability* at 2. Furthermore, Defendants claim TAMU had a statutory and contractual duty to disclose to the PTO the government's funding and consequential rights in the '928 patent. *Defs.' Reply in Supp. of their Mot. for Summ. J. of Unenforceability* at 2–3. Plaintiffs contend that although federal funds were used to develop the '928 patent, there was no "funding agreement" to which TAMU was a party. Therefore, Plaintiffs argue that the federal government has no rights to the '928 patent and there was no duty to disclose the source of the funding. And, even if there were a duty to disclose, Plaintiffs' contend that the failure to do so is not inequitable conduct. *Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J. of Unenforceability* at 1.

Within the specification of an application for a patent developed under a "funding agreement", there must be a statement specifying that the "invention was made with Government support and that the government has certain rights in the invention." 35 U.S.C. § 202(c)(6). In order to determine if there was a duty to disclose in the instant case, the court must first determine if federal funding went into the development of the '928 patent pursuant to a "funding agreement" as used in the Bayh–Dole Act:

> The term "funding agreement" means any contract, grant, or cooperative agreement entered into between any Federal Agency, other than the Tennessee Valley Authority, and any contractor for the performance of experimental, developmental, or research work funded in whole or in part by the federal government. Such term includes any assignment, substitution of parties, or *subcontract of any type* entered into for the performance of experimental, developmental, or research work under a funding agreement as herein defined.

35 U.S.C. § 201(b) (emphasis added). Under the Act, a "contractor" is "any person, small business firm, or *nonprofit organization* that is a party to a funding agreement." 35 U.S.C. § 201(c) (emphasis added). The Act grants the funding federal agency a "nonexclusive, nontransferable, irrevocable, paid-up license to practice or have practiced for or on behalf of the United States any *subject invention* throughout the world." 35 U.S.C. § 202(c)(4) (emphasis added). A "subject invention" is "any invention of the contractor conceived or first actually reduced to practice in the performance of work under a funding agreement." 35 U.S.C. § 201(e). Thus, if TAMU, a nonprofit organization,

received funds from the Federal Highway Administration ("FHwA"), a federal agency, through the terms of a subcontract with the Texas Department of Transportation("TxDOT"), in order to develop the '928 patent, a subject invention, the federal government automatically had an irrevocable license to the '928 patent, and TAMU had a statutory duty to disclose the existence of those rights during the patent application process.

FHwA, a federal agency within the United States Department of Transportation, provided money to the Texas State Department of Highways and Public Transportation in 1985 and 1986. *See Defs.' Sur–Reply in Opp'n to Pls.'Mot. for Partial Summ. J.,* Ex. 5 (Dkt.# 292) ("Federal–Aid Project Agreement, Project No. HPR–0010(9)" providing $5,767,454 in federal funds in 1985), and Ex. 7 ("Federal–Aid Project Agreement, Project No. HPR–0010(10)" providing $1,300,000 in federal funds in 1986). The Texas State Department of Highways and Public Transportation has since been renamed "TxDOT". The agreements under which the federal money was given by the federal agency to TxDOT are "funding agreements". *See* 35 U.S.C. § 201(b). TxDOT, in turn, used that federal money to fund research projects at the Texas Transportation Institute ("TTI") to develop guardrail end treatment technology. *See Defs.' Mot. for Summ. J. of Unenforceability,* Ex. 51, at 4 ("1985 Study Proposal Agreement"). TTI is part of TAMU. *See Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J. of Unenforceability* at 13, n. 2. Between September 1, 1985 and August 31, 1987, TxDOT provided TTI with $216,608.92 for the guardrail end treatment project. *See Defs.' Sur–Reply in Opp'n to Pls.' Mot. for Partial Summ. J.,* Exs. 6, 8.[1] The funding

---

1. The audits are for "HPR–0010(9)" and "HPR–0010(10)". These are the federal numbers given in the original grant of funds from

FHwA to TxDOT. Additionally, the funding figures attributed to the guardrail end treat-

of the specific guardrail end treatment project described in the 1985 Study Proposal Agreement was made pursuant to the more general research agreement embodied in the 1985 Cooperative Research Agreement between TxDOT and TAMU. *See Defs.' Sur–Reply in Opp'n to Pls.' Mot. for Partial Summ. J.*, Ex. 9.

Thus, funding was given by the federal government through its agency, FHwA, to TxDOT in order to conduct research. TxDOT forwarded a part of those funds to TAMU in order to develop new guardrail end treatment technology. The '928 patent resulted from the research. The 1985 Study Proposal Agreement and the 1985 Cooperative Research Agreement are "subcontracts" as used in 35 U.S.C. § 201(b). Therefore, a "nonexclusive, nontransferable, irrevocable, paid-up license" arose pursuant to the Bayh–Dole Act. *See* 35 U.S.C. § 202(c)(4). Furthermore, a contractual right to an interest in the patent arose from the 1985 Cooperative Agreement. The language of paragraph IV.(a) mirrors the language of the statute. *See Defs.' Sur–Reply in Opp'n to Pls.' Mot. for Partial Summ. J.*, Ex. 9, at 4; 35 U.S.C. § 202(c)(4).

Because TAMU can accurately be labeled a "contractor" due to its status as a party to a "funding agreement", Section 202(c)(6) and the Manual of Patent Examining Procedures Section 310 issued by the PTO required the disclosure of the federal government's rights during the prosecution of the '928 patent. *See* 35 U.S.C. § 202(c)(6); Manual of Patent Examining Procedure § 310 (contained in *Defs.' Mot. for Summ. J. of Unenforceability*, Ex. 4).

Plaintiffs did not disclose, as required, the government funding or the United States' rights in the '928 patent during the prosecution process. *Defs.' Mot. for*

*Summ. J. of Unenforceability*, Ex. 47, at 5 (TAMU's response to Defendants' requests for admissions). Defendants assert that this nondisclosure is "concealment" that amounts to sufficient inequitable conduct to preclude the Plaintiffs' ability to enforce the '928 patent against alleged infringement. *Id.* at 2.

Parties before the PTO are charged with a duty to disclose information material to patentability:

[I]nformation is material to patentability when it is not cumulative to information already of record or being made of record in the application, and (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or (2) It refutes, or is inconsistent with, a position the applicant takes in: (i) Opposing an argument of unpatentability relied on by the Office, or (ii) Asserting an argument of patentability.

37 C.F.R. § 1.56(b). Information is "material" when there is a "substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent." *Elk Corp. of Dallas v. GAF Bldg. Materials Corp.*, 168 F.3d 28, 31 (Fed.Cir.1999). To be material, the information must be the type that a reasonable examiner would consider in allowing the patent. *Merck & Co. v. Danbury Pharmacal, Inc.*, 873 F.2d 1418, 1421 (Fed. Cir.1989).

Although Defendants concede that most findings of inequitable conduct have involved the omission of prior art, they have failed to link the nondisclosure in the instant case to patentability. Even if TAMU had a duty to disclose the information, and it breached that duty by failing to disclose,

ment project are based on the project number listed in the audits corresponding to the project number listed in the 1985 Study Proposal Agreement. The 1985 Study Proposal Agreement also has the same federal number.

Defendants have presented nothing more to show how the omission has affected the patent examiner's decision to accept or reject TAMU's patent application. Defendants have offered no evidence, other than the mere breach of a duty, to establish that Plaintiffs failed to disclose *material* information. Defendants have shown that Plaintiffs failed to disclose information, but the court finds the information to be less than material. Defendants have not even suggested that the information regarding funding and the government's subsequent rights would possibly cause an examiner to deny the patent. Had the information been disclosed, it would not have been considered by the examiner, because the funding information does not have a logical relationship to the decision on whether or not to issue the '928 patent.

Similarly, Defendants offer no proof to support their conclusory statement that Plaintiffs intentionally deceived the PTO. While Defendants do not need to present direct evidence of intent, they do need to present sufficient evidence to allow an inference of wrongful intent from the surrounding circumstances. *Baxter,* 149 F.3d at 1329. There must be clear and convincing evidence that the Plaintiffs made a deliberate decision to withhold a known material reference. *Id.* Due to the court's conclusion that the information in question was not material, it is impossible for the Defendants to clear the high burden required on this issue at the summary judgment stage.

Defendants have not presented sufficient evidence of materiality and intent to deceive the PTO to warrant summary judgment in their favor on the affirmative defense of unenforceability due to inequitable conduct.

### B. *Misuse*

■ Defendants claim that Plaintiffs engaged in wrongful conduct after the patent was issued that constitutes patent misuse. Patent misuse is an affirmative defense. *Virginia Panel Corp. v. MAC Panel Co.,* 133 F.3d 860, 868 (Fed.Cir.1997). As such, Defendants have the burden of presenting evidence that persuades the court that Plaintiffs' conduct amounted to patent misuse as a matter of law.

■ Establishing patent misuse requires the movant to present evidence that the patent holder has impermissibly broadened the scope of the patent grant causing an anticompetitive effect. *Id.* Defendants have not alleged *per se* patent misuse. Therefore, the behavior alleged to be beyond the statutory rights of the Plaintiffs, must be analyzed under the rule of reason. *Id.* at 869. Under the rule of reason, the fact finder must decide whether the alleged behavior imposes an unreasonable restraint on trade under a variety of factors. *Id.* (citing *State Oil Co. v. Khan,* 522 U.S. 3, 10, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997)).

While Defendants relate in detail the alleged conduct they believe to be patent misuse, they cite no authority for the court to conclude that the alleged actions constitute patent misuse as a matter of law. *See Defs' Mot. for Summ. J. of Unenforceability* at 17–26 (containing nine pages of factual allegations, but not one case holding that similar behavior constituted patent misuse). Outside the conclusory statements that the behavior had an anticompetitive effect,[2] Defendants provide no legal or theoretical basis for linking the behavior to an unreasonable restraint on competition as required by the Federal Circuit and the rule of reason. *See Virgi-*

---

2. *See Defs.' Reply in Support of Their Mot. for Summ. J. of Unenforceability* at 8 ("The concealment and denial of government license rights during the commercial exploitation and enforcement of a United States Patent is *inherently anticompetitive* and restrains competition in a manner that is unreasonable as a matter of law.") (emphasis added).

*nia Panel Corp.*, 133 F.3d at 869. Rather Defendants merely present the facts and skip to the legal conclusion without providing the necessary legal analysis. Defendants have presented no relevant evidence on any one of the rule of reason factors in order to show that Plaintiffs' actions had an anticompetitive effect. Furthermore, the court is unable to find any case concluding that actions similar to those alleged in the instant case constitute patent misuse.

Accordingly, Defendants have failed to satisfy the evidentiary burden required to succeed on this motion for summary judgment.

After considering the arguments of the parties and the applicable law, the court concludes that "Defendants' Motion for Summary Judgment of Unenforceability" should be DENIED.

It is so ORDERED.